## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Elba J. Dormoi,<br><br>              Debtor. | Bankruptcy No. 15-19187-elf<br><br>Chapter 13<br><br>Doc. No. 12 |

### MOTION TO RESTRICT ACCESS AND AUTHORIZE FILING OF REPLACEMENT NOTICE OF MORTGAGE PAYMENT CHANGE

Pursuant to sections 105(a) and 107(c) of title 11 of the United States code (the "Bankruptcy Code"), rule 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC ("Movant"), by and through its undersigned counsel, hereby moves this Court, for entry of an order (the "Order"), substantially in the form attached hereto as Exhibit A (i) directing the Clerk of the Court to restrict remote electronic access to the Filings (as defined below) to protect certain personally identifiable information ("PII") contained therein, and (ii) authorizing Movant to make a Replacement Filing (as defined below). In support of this motion (the "Motion"), Movant respectfully states as follows:

1.    A Notice of Mortgage Payment Change, filed on March 31, 2016, as document number 12 on the Docket which contains one or more of the identifiers enumerated in Fed. R. Bankr. P. 9037.

17-062911 - AnA

2.     Movant also requests authority to file the Replacement filing, in the form attached hereto.  The Replacement filing is substantively identical to the Filing in all respects, except for the removal of any imperfectly redacted PII. As set forth above, Movant has taken steps to ensure the Replacement filing complies with Bankruptcy Rule 9037(a).

3.     Movant further requests that the Replacement filing be deemed to have been filed, for all purposes, on the date the respective Filing was originally filed to ensure that Movant is not prejudiced in any manner.

WHEREFORE, Movant respectfully requests that the Court enter an Order (i) directing the clerk of the Court to permanently restrict remote electronic access to the Filing, (ii) authorizing the filing of the Replacement filing, and (iii) granting such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Robertson, Anschutz & Schneid, PL
6409 Congress Avenue, #100
Boca Raton, FL 33487
Tel: (561) 241-6901
Fax: (561) 241 -1969

By: /s/ Kevin Buttery
Kevin Buttery, Esquire
PA I.D. 319438
kbuttery@rascrane.com

Dated: February 2, 2018

17-062911 - AnA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Elba J. Dormoi,<br><br>          Debtor. | Bankruptcy No. 15-19187-elf<br><br>Chapter 13<br><br>Doc. No. 12 |

### CERTIFICATE OF SERVICE
### OF MOTION TO REDACT AND RESTRICT PUBLIC ACCESS
### AND AUTHORIZE FILING OF REPLACEMENT NOTICE OF MORTGAGE
### PAYMENT CHANGE

I, the undersigned, certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on February 2, 2018, I served copies of the above-captioned Motion upon the parties in interest in this proceeding, by first class U.S. Mail, postage prepaid or electronic mail, at the following addresses:

BRENNER & BRENNER P.C.
1420 WALNUT STREET
SUITE 720
PHILADELPHIA, PA  19102

ELBA J. DORMOI
232 REGINA ST
PHILADELPHIA, PA  19116

WILLIAM C. MILLER, ESQ.
1234 MARKET STREET
SUITE 1813
PHILADELPHIA, PA  19107

17-062911 - AnA

UNITED STATES TRUSTEE
833 CHESTNUT STREET
SUITE 500
PHILADELPHIA, PA  19107

Respectfully Submitted,

Robertson, Anschutz & Schneid, PL
6409 Congress Avenue, #100
Boca Raton, FL 33487
Tel: (561) 241-6901
Fax: (561) 241 -1969

By: /s/ Kevin Buttery
Kevin Buttery, Esquire
PA I.D. 319438
kbuttery@rascrane.com

17-062911 - AnA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Elba J. Dormoi,<br><br>             Debtor. | Bankruptcy No. 15-19187-elf<br><br>Chapter 13<br><br>Doc. No. 12 |

## <u>ORDER OF COURT</u>

**AND NOW**, upon consideration of the Motion to Redact and Restrict Public Access and

Authorize Filing of Replacement Notice of Mortgage Payment Change, filed by DITECH

FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC;

**AND**, the Court concluding that the subject Notice of Mortgage Payment Change,

(including all attachments) fails to comply with Fed. R. Bankr. P. 9037;

It is therefore **ORDERED** that:

1. This Motion is **GRANTED**.

2. The Clerk **SHALL PROHIBIT PUBLIC ACCESS** to :

A.       Notice of Mortgage Payment Change, filed on March 31, 2016, as document

number 12 on the Docket.

17-062911 - AnA

DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC shall file redacted

copies of the document(s) identified in Paragraph 2 above **on or before** _____.


Dated: _____


                                        BY THE COURT:


                                        _____
                                        HONORABLE Chief Judge Eric L. Frank
                                        UNITED STATES BANKRUPTCY JUDGE

17-062911 - AnA

Case 15-19187-elf    Doc 12    Filed 03/31/16    Entered 03/31/16 18:42:22    Desc Main

| Fill in this information to identify the case: | | |
|---|---|---|
| Debtor 1 | ELBA DORMOI | |
| Debtor 2 (Spouse, if filing) | | |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF PENNSYLVANIA | |
| Case number | 15-19187 | |

## Official Form 410S1

## Notice of Mortgage Payment Change

12/15

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.** See Bankruptcy Rule 3002.1.

**Name of Creditor**: Ditech Financial LLC

**Court Claim no**. (if known): 0

**Last four digits** of any number
You use to identify the debtor's account:          7828

**Date of Payment change:**
Must be at least 21 days after date
Of this notice          05/01/2016

**New total payment**          $1,059.12
Principal, interest, and escrow, if any

---

### Part 1:    Escrow Account Payment Adjustment

**1. Will there be a change in the debtor's escrow account payment?**

☐ No

☒ Yes. Attach a copy of the escrow account statement  prepared in a form consistent with applicable nonbankruptcy law. Describe
annual escrow analysis--*NOTE: Any difference in
payment amount for payments due prior to the
expiration of the 21 day notice period will be waived or
the basis for the change. If a statement is not attached, explain why:    applied to the principal balance, as applicable.

**Current escrow payment: $**    0.00          **New escrow payment:  $**    213.91

### Part 2:    Mortgage Payment Adjustment

**2. Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**

☐ No

☒ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not
loan rate modification--*NOTE: Any difference in payment amount for payments due
prior to the expiration of the 21 day notice period will be waived or applied to the
attached, explain why:    principal balance, as applicable.

**Current interest rate:**    3.00000    %          **New interest rate:**    4.00000    %

**Current principal and interest payment: $**    736.90          **New principal and interest payment: $**    845.21

### Part 3:    Other Payment Change

**3. Will there be a change in the debtor's mortgage payment for a reason not listed above?**

☒ No

☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement.
*(Court approval may be required before the payment change can take effect.)*

Reason for change: _____

**Current mortgage payment: $** _____          **New mortgage payment: $** _____

Debtor 1    ELBA DORMOI _____    Case number (if known) 15-19187

| Part 4: | Sign Here |

The person completing this Notice must sign it.  Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box:*

☐    I am the creditor.

☒    I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

| **X** /s/ NATALIE PIERSALL | | Date | 03/23/2016 |
| Signature | | | |

| Print | NATALIE PIERSALL | Title | Bankruptcy Representative |
| Company | Ditech Financial LLC | | |
| Address | P.O. Box 6154 | | |
| | Rapid City, SD 57709-6154 | | |
| Contact phone | 888-298-7785 | Email | poc.team@ditech.com |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA (PHILADELPHIA)

**IN RE:  ELBA J. DORMOI**                              **NO. 15-19187**

## CERTIFICATE OF SERVICE

I, Natalie Piersall, do hereby certify that I have served a true and correct copy of the
**Notice of Mortgage Payment Change** filed by Ditech Financial LLC on 3/31/16 via ECF
notification service to attorney and trustee and USPS mail to debtor: Elba J. Dormoi,
232 Regina Street, Philadelphia, PA 19116; ALAN B. LISS, bnklaw@aol.com; WILLIAM C.
MILLER, ecfemails@ph13trustee.com.

DATED:  This the 31st day of March, 2016.


/s/ Natalie Piersall


Natalie Piersall
Bankruptcy Document Clerk
Ditech Financial LLC
P.O. Box 6154
Rapid City, SD 57703



P O Box 6172
Rapid City, SD 57709-6172
1(800) 643-0202

**ESCROW ACCOUNT**
**DISCLOSURE STATEMENT**

January 15, 2016

Elba Dormoi
232 Regina St
Philadelphia, PA 19116

## THIS IS NOT AN ATTEMPT TO COLLECT A DEBT BUT INSTEAD IS A LEGALLY REQUIRED NOTICE PROVIDING INFORMATION ON YOUR ESCROWED TAXES AND INSURANCE.

THIS ESCROW ACCOUNT REVIEW WAS PERFORMED AS OF THE DATE THAT YOU FILED FOR CHAPTER 13 BANKRUPTCY AND YOUR NEW MONTHLY ESCROW PAYMENT HAS BEEN CALCULATED IN ACCORDANCE WITH BANKRUPTCY LAW. BEFORE WE HAD NOTICE OF YOUR CHAPTER 13 BANKRUPTCY, YOU MAY HAVE RECEIVED NOTICE OF A DIFFERENT AMOUNT. THE NEW ESCROW MONTHLY PAYMENT PROVIDED IN THIS STATEMENT IS THE UPDATED AND CORRECT AMOUNT.

### ESCROW ACCOUNT DISCLOSURE STATEMENT
### STATEMENT OF ACTUAL ESCROW ACCOUNT HISTORY
Compare it to the last Escrow Account Disclosure Statement-Projections that you received.

LOAN NUMBER:                                      Feb-15 THROUGH Sep-15
PAST YEARS PAYMENT BREAKDOWN:          Prin & Int Pymt 736.9
                                                          Escrow Pymt $498.22
                                                          Non Escrow Pymt:
                                                          Total Payment: $1,235.12

| | | Escrow | | Escrow Balance | |
| Month | To | From | Description | Projected | Actual |
|---|---|---|---|---|---|
| | | | | | -$970.59 |
| Feb - 15 | | $2,566.97 | ESCROW -CITY/TOWN/BOROUGH | | -$3,537.56 |
| Sep - 15 | | $2,085.30 | ESCROW - HAZARD/FIRE | | -$5,622.86 |

UNDER FEDERAL LAW, YOUR LOWEST MONTHLY BALANCE (LP) SHOULD NOT HAVE EXCEEDED OR 1/6 OF THE ANTICIPATED PAYMENTS FROM YOUR ESCROW ACCOUNT. UNLESS YOUR MORTGAGE DOCUMENTS OR STATE LAW SPECIFIES A LOWER AMOUNT. UNDER YOUR MORTGAGE DOCUMENTS OR STATE LAW,

YOUR LOWEST MONTHLY BALANCE SHOULD NOT HAVE EXCEEDED . YOUR ACTUAL LOWEST ESCROW BALANCE WAS -$5,622.86
THE INFORMATION PROVIDED DOES NOT REQUIRE ANY ACTION ON YOUR PART. IF YOU HAVE ANY QUESTIONS, PLEASE CALL OUR TOLL FREE NUMBER (800) 643-0202.



P O Box 6172
Rapid City, SD 57709-6172
1(800) 643-0202

**NAME:** Elba Dormoi

**Continue of Account:**

### ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT– PROJECTIONS

LOAN NUMBER:                               December 31, 2015  THROUGH  December-16

---------------PROJECTED ESCROW DISBURSEMENTS--------------
PMI/HAZARD/FIRE $0.00
STATE/COUNTY/CITY $2,566.97
TOTAL PROJECTED ESCROW DISBURSEMENTS: $2,566.97
ESCROW BASE PAYMENT CALCULATION: $2,566.97/ 12 = $213.91

| Month | To Escrow | From Escrow | | Escrow Balance Projected | Escrow Balance Required |
|---|---|---|---|---|---|
| | | | | -$5,622.86 | $2,566.97 |
| Jan - 16 | $213.91 | | | -$5,408.95 | $2,780.88 |
| Feb - 16 | $213.91 | | | -$5,195.04 | $2,994.79 |
| Feb - 16 | | $2,566.97 | CITY | -$7,762.01 | $427.82 |
| Mar - 16 | $213.91 | | | -$7,548.10 | $641.73 |
| Apr - 16 | $213.91 | | | -$7,334.19 | $855.64 |
| May - 16 | $213.91 | | | -$7,120.28 | $1,069.55 |
| Jun - 16 | $213.91 | | | -$6,906.37 | $1,283.46 |
| Jul - 16 | $213.91 | | | -$6,692.46 | $1,497.37 |
| Aug - 16 | $213.91 | | | -$6,478.55 | $1,711.28 |
| Sep - 16 | $213.91 | | | -$6,264.64 | $1,925.19 |
| Oct - 16 | $213.91 | | | -$6,050.73 | $2,139.10 |
| Nov - 16 | $213.91 | | | -$5,836.82 | $2,353.01 |
| Dec - 16 | $213.91 | | | -$5,622.91 | $2,566.92 |

CUSHION SELECTED BY SERVICER: $427.82

YOUR ENDING ESCROW BALANCE FROM THE LAST MONTH OF THE ACCOUNT HISTORY IS -$5,622.86. YOUR STARTING BALANCE ACCORDING TO THIS
ANALYSIS SHOULD BE $2,566.97.



P O Box 6172
Rapid City, SD 57709-6172
1(800) 643-0202

## THE PROOF OF CLAIM DEFICIENCY/ SHORTAGE

THE PROOF OF CLAIM DEFICIENCY/SHORTAGE IS THE AMOUNT NEEDED TO FUND ESCROW AT THE REQUIRED BALANCE.

| | |
|---|---|
| Actual Escrow Balance | -$5,622.86 |
| Required Escrow Balance | $2,566.97 |
| Amount Needed to Fund Escrow at the Required Balance | $8,189.83 |
| -------- Deficiency | $5,622.86 |
| --------- Shortage | $2,139.15 |
| --------- Amount needed to fund escrow resulting from required cushion | $427.82 |

THE AMOUNT NEEDED TO FUND ESCROW AT THE REQUIRED BALANCE INCLUDES EACH OF THE COMPONENTS ABOVE: DEFICIENCY, SHORTAGE AND CUSHION.   IF YOU HAVE FILED A CHAPTER 13 PLAN THAT PROVIDES FOR MAINTAINING THIS PROPERTY, THESE ESCROW AMOUNTS WILL BE COLLECTED PURSUANT TO THE TERMS OF YOUR PLAN.

PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE NEXT ESCROW ACCOUNTING COMPUTATION YEAR.

### NEW MONTHLY PAYMENT EFFECTIVE 1/1/2016
Prin & Int Pymt $ 736.9
Escrow Pymt  $213.91
TOTAL $ $950.81

FOR ADJUSTABLE RATE MORTGAGES: THE TERMS OF YOUR LOAN MAY RESULT IN CHANGES TO THE MONTHLY PRINCIPAL AND INTEREST PAYMENTS DURING THE YEAR.

Bank of America 🇺🇸 Home Loans

Section 2c: Home Affordable Modification Agreement
(Customer Copy)

Investor Loan #▮▮▮▮▮▮

**After Recording Return To:**
BAC Home Loans Servicing, LP
Attn: Home Retention Division
4500 Amon Carter Blvd.
Fort Worth, TX 76155

This document was prepared by Home Retention Services

_____[Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I")[1]: ELBA DORMOI
Lender or Servicer ("Lender"): BAC Home Loans Servicing, LP
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): June 26, 2006
Loan Number: ▮▮▮▮▮▮
Property Address *[and Legal Description if recordation is necessary]* ("Property"): 232 REGINA STREET
PHILADELPHIA, PA 19116

MERS: ▮▮▮▮▮▮▮▮▮▮
*"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.*

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage or Deed of Trust ("Mortgage") on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations**. I certify, represent to Lender and agree:

   A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.    I live in the Property as my principal residence, and the Property has not been condemned;

   C.    There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.    I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Home Affordable Modification program ("Program"));

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E.      Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the program, are true and correct;

F.      If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.      I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.    **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

A.      If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.      I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.    **The Modification.**  If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on March 1, 2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on March 1, 2010.

A.      The new Maturity Date will be: February 1, 2050.

B.      The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan . The new principal balance of my Note will be $266,546.14 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.      $57,088.97 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $209,457.17. Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of February 1, 2010 and the first new monthly payment on the New Principal Balance will be due on March 1, 2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-5 | 2.000% | February 1, 2010 | $634.29 | $299.74, may adjust periodically | $934.03, may adjust periodically | March 1, 2010 | 60 |
| 6 | 3.000% | February 1, 2015 | $736.90 | May adjust periodically | May adjust periodically | March 1, 2015 | 12 |
| 7 | 4.000% | February 1, 2016 | $845.21 | May adjust periodically | May adjust periodically | March 1, 2016 | 12 |
| 8 | 5.000% | February 1, 2017 | $958.34 | May adjust periodically | May adjust periodically | March 1, 2017 | 12 |
| 9-40 | 5.125% | February 1, 2018 | $972.65 | May adjust periodically | May adjust periodically | March 1, 2018 | 384 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.    I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G.    If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.    **Additional Agreements.** I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.    That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.    To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.    That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

> **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;

(c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.   I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The Lender and I have executed this Agreement.

Mortgage Electronic Registration Systems, Inc. -
Nominee for BAC Home Loans Servicing, LP

By: _____ Myra Leblanc

_5- 3- 2 0/0_
Date

ELBA DORMOI

_3- 2- 2010_
Date

_____[Space Below This Line For Acknowledgement]_____

Commonwealth of Pennsylvania
County of Philadelphia

The foregoing instrument was acknowledged before me
this March 2th 2010, by ELBa Dormoi, who is
personally known to me or who has produced
Driver's License as identification.

Witness my hand an official seal

NOTARIAL SEAL
GRIMILDA DORMOI, Notary Public
City of Philadelphia, Phila. County
My Commission Expires May 27, 2012

Notary Public for the state of Pennsylvania
My commission expires May 27, 2012.

# *Delaware*

PAGE   1

## *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"DITECH MORTGAGE CORP", A CALIFORNIA CORPORATION,

"DT HOLDINGS LLC", A DELAWARE LIMITED LIABILITY COMPANY,

WITH AND INTO "GREEN TREE SERVICING LLC" UNDER THE NAME OF "GREEN TREE SERVICING LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE THIRTEENTH DAY OF AUGUST, A.D. 2015, AT 1:35 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE THIRTY-FIRST DAY OF AUGUST, A.D. 2015, AT 12:05 O'CLOCK A.M.

2458190   8100M

151168309

Jeffrey W. Bullock, Secretary of State
AUTHENTICATION: 2641973

DATE: 08-13-15

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 01:35 PM 08/13/2015*
*FILED 01:35 PM 08/13/2015*
*SRV 151168309 - 2458190 FILE*

# STATE OF DELAWARE
# CERTIFICATE OF MERGER

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act, the undersigned hereby executes the following Certificate of Merger:

**FIRST**: The surviving limited liability company is **Green Tree Servicing LLC**, a Delaware limited liability company, and the corporation and limited liability company being merged into this surviving limited liability company are:

> **DT Holdings LLC**, a Delaware limited liability company, and
> **Ditech Mortgage Corp**, a California corporation.

**SECOND:** The Agreement and Plan of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations and limited liability companies pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

**THIRD:** The name of the surviving limited liability company is hereby amended to **Ditech Financial LLC**, a Delaware limited liability company (as such surviving entity, the "Surviving Limited Liability Company").

**FOURTH:** The mergers are to become effective as of 12:05 AM EDT on August 31, 2015.

**FIFTH:** The Agreement and Plan of Merger is on file at 3000 Bayport Drive, Suite 880, Tampa, FL 33607, the principal place of business of the Surviving Limited Liability Company.

**SIXTH:** A copy of the Agreement and Plan of Merger will be furnished by the Surviving Limited Liability Company on request, without cost, to any stockholder or member of the constituent corporations or limited liability companies, as applicable.

[The remainder of page intentionally left blank.]

**IN WITNESS WHEREOF,** said Surviving Limited Liability Company has caused this certificate to be signed by an authorized officer, the 4th day of August, 2015.

**GREEN TREE SERVICING LLC**

By: _____

Name: Wanda Lamb-Lindow
Title: Assistant Secretary

[Certificate of Merger]